UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMPLAINT

------------------------------------------------X

CLASS ACTION
COMPLAINT

CHARLES MEYERS, JOHN BAKER,
JUSTIN STREKAL and MILES WALSH
(CLASS REPRESENTATIVES)

14CV9142-ALC

                  PLAINTIFFS,

JURY TRIAL
DEMANDED

     vs.

ECF CASE

CITY OF NEW YORK; MICHAEL
RUBENS BLOOMBERG, individually and
in his official capacity as former Mayor of
the City of New York; former NYPD Chief
of Department JOSEPH J. ESPOSITO,
individually and in his official capacity;
former NYPD Commissioner RAYMOND
KELLY, individually and in his official
capacity; NYPD Patrol Officers FREDDY
YNOA Shield 18851, HANS FRANCOIS
Shield 25825, JOHN ZARANIS Shield
09645, VASILE DUBOVICI Shield 28892,
Officer DOES 1-100,

SUBJECT TO THE PLAN
FOR CERTAIN § 1983
CASES AGAINST THE
CITY OF NEW YORK

              Defendants.

------------------------------------------------X

# TABLE OF CONTENTS

COMPLAINT ....................................................................................................................3

A.  PRELIMINARY STATEMENT ................................................................................3

B.  JURISDICTION AND VENUE .................................................................................5

C.  JURY DEMAND .......................................................................................................5

D.  PARTIES ....................................................................................................................5

INDIVIDUAL PLAINTIFFS .........................................................................................5

CLASS PLAINTIFFS ......................................................................................................6

DEFENDANTS ................................................................................................................6

F.  STATEMENT OF FACTS ........................................................................................10

EVICTION, ARRESTS, AND PROSECUTIONS ........................................................10

CITY POLICY ...............................................................................................................18

QUALIFIED IMMUNITY ............................................................................................20

CLASS ACTION ALLEGATIONS ..............................................................................20

FIRST CLAIM FOR RELIEF .......................................................................................23

SECOND CLAIM FOR RELIEF ..................................................................................24

THIRD CLAIM FOR RELIEF ......................................................................................25

FOURTH CLAIM FOR RELIEF ..................................................................................26

F.  DAMAGES ...............................................................................................................30

CONCLUSION...............................................................................................................30

PLAINTIFFS CHARLES MEYERS ("Plaintiff MEYERS"), MILES WALSH ("Plaintiff WALSH), and JOHN BAKER ("Plaintiff BAKER), each on their own individual behalf and as class representatives on behalf of all others similarly situated (collectively "PLAINTIFFS"), by their attorney, Paul L. Mills, Esq., for this Complaint, complaining of the defendants, respectfully allege as follows:

## COMPLAINT

(Constitutional and civil rights class action lawsuit)

## A.  PRELIMINARY STATEMENT

1.      This case concerns the eviction by the City of New York, through its NYPD, without a prior court ruling, of Occupy Wall Street demonstrators ("OWS") visiting and camping in the Manhattan Financial District's Zuccotti Park on November 15, 2011 (the "Eviction").

2.      It charges that the City and its police set themselves up as a court, and then acted on their own decision to evict these people from their shelters, and asks whether, absent a genuine emergency, a real court should subsequently condone this untrammeled exercise of government power.

3.     Here, New York City claimed that a *fire hazard* justified emergency, middle-of-the-night evacuation, as if Zuccotti Park were actually *on fire*. PLAINTIFFS submit that the offer of this purported is tantamount to an admission of culpability.

4.     Two lower state courts subsequently considered the question of the lawfulness of rules that the demonstrators were alleged to be violating, and the prima facie validity of low-level, non-criminal charges against them arising from the alleged violation of those rules.

5.     However, no federal court has considered the question of whether this privately-owned park, open to the public 24 hours a day by agreement between the owners and the government, qualified as a traditional public forum, and, if so, whether the City could still do as it pleased with the OWS demonstrators it found to be offensive.

6.     No court has considered the question of whether, even if Zuccotti Park were not a traditional public forum, the government's decision, to evict OWS without a hearing or court order – without due process of law, was constitutional.

7.     PLAINTIFFS bring this action in order to test the lawfulness of these actions, which they believe threaten the survival of First Amendment activity in a growing number of privately-owned public spaces throughout the country.

## B.  JURISDICTION AND VENUE

8.     This action arises under the First, Fourth and 14th Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

9.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 (federal question), and 1343 (federal civil rights).

10.    The Southern District of New York is the proper venue for this lawsuit because the cause of action arose in New York County, in the State of New York. The acts complained of occurred in the City of New York and in the Southern District of New York. Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## C.  JURY DEMAND

11.    PLAINTIFFS demand trial by jury in this action on all issues so triable.

## D.  PARTIES

## INDIVIDUAL PLAINTIFFS

12.     Plaintiff MEYERS is a citizen and resident of the United States of America.

13.     Plaintiff WALSH is a citizen and resident of the United States of America.

14.     Plaintiff BAKER is a citizen and resident of the United States of America.

15.     Plaintiff STEKAL is a citizen and resident of the United States of America.

CLASS PLAINTIFFS

16.     The proposed class of plaintiffs is: All persons whom, on November 15, 2011, the Defendants, who, during and as a result of NYPD's eviction of Zuccotti Park occupants and residents, were subjected to arrest and criminal prosecution resulting in a termination favorable to the class member plaintiffs, as set forth herein.

DEFENDANTS

16.     Defendant CITY OF NEW YORK is a municipal corporation which, under the administration of its former Mayor, Defendant MICHAEL RUBENS BLOOMBERG ("Defendant BLOOMBERG") and through its New York Police Department ("NYPD"), operated a number of subordinate law enforcement facilities.  The NYPD, through its senior officials, including Defendants Former NYPD Police Commissioner RAYMOND KELLY ("Defendant KELLY") and Former Chief of Department JOSEPH J. ESPOSITO ("Defendant ESPOSITO"), in each facility, and in its specialized units, promulgated and implemented policies, including those with respect to arrests, and the reporting and investigation of lawful and unlawful arrests, by uniformed officers including the individual NYPD officers who are defendants in this action.  In addition, senior officials in the NYPD were aware of and tolerated certain practices by subordinate officers, including some that were inconsistent with formal or stated policy.  These practices, because they were widespread, long-standing, and/or deeply embedded in the culture of the agency, constituted unwritten NYPD policies, practices and customs.

17.     At all times relevant hereto, Defendant MICHAEL RUBENS BLOOMBERG was the elected, appointed and sworn Mayor of Defendant CITY OF NEW YORK, acting in the capacity of agent, servant, and employee of Defendant CITY OF NEW YORK, within the scope of their employment as such,

and acting under color of state law.  At all times relevant, he was the chief policymaker for the CITY OF NEW YORK and its departments and agencies, including the NYPD.  Mayor BLOOMBERG directed, approved and ratified the unconstitutional conduct challenged herein. He is sued in his official and individual capacities.

18.     At all times relevant hereto, Defendant RAYMOND W. KELLY was the appointed and sworn Commissioner of the NYPD, which is an agency of the City of New York, acting in the capacity of agent, servant, and employee of Defendant CITY OF NEW YORK, within the scope of his employment as such, and acting under color of state law.  Defendant KELLY was a policymaker for the CITY of NEW YORK and NYPD. Defendant KELLY directed, approved and ratified the unconstitutional conduct challenged herein. He is sued in his official and individual capacities.

19.     At all times relevant hereto, Defendant JOSEPH J. ESPOSITO was the appointed and sworn NYPD Chief of Department, acting in the capacity of agent, servant, and employee of Defendant CITY OF NEW YORK, within the scope of his employment as such, and acting under color of state law.  Defendant ESPOSITO was a policymaker for the CITY of NEW YORK and NYPD. Defendant ESPOSITO directed, approved and ratified the unconstitutional conduct challenged herein. He is sued as both an individual and in his official capacity.

20.     At all times relevant hereto, each Defendant NYPD Patrol Officer, whether identified herein by name and/or shield number as NYPD Patrol Officers FREDDY YNOA Shield 18851, HANS FRANCOIS Shield 25825, JOHN ZARANIS Shield 09645, VASILE DUBOVICI Shield 28892, or referred to as DOES 1-100 and identified herein as such, was a sworn and appointed patrol officer of the NYPD, acting in the capacity of agent, servant, and employee of Defendant CITY OF NEW YORK, within the scope of their employment as such, and acting under color of state law, and acting upon their own individual, independent authority and exercising their own individual, independent judgment. Each such individual Defendant NYPD Patrol Officer is sued in their individual capacity.

21.     At all times relevant hereto, each of the individual defendant NYPD officers was present during, personally ordered, participated in, or assisted in PLAINTIFFS' arrests as set forth in this Complaint; and was a sworn and appointed patrol officer of the NYPD.

22.     In the case of Defendants KELLY and ESPOSITO, each of the individual defendants was a sworn and appointed senior officer of the NYPD, or, in the case of Defendant BLOOMBERG, was the elected, appointed and sworn Mayor of the CITY OF NEW YORK, acting in the capacity of agent, servant, and employee of Defendant CITY OF NEW YORK, within the scope of their

employment as such; and was acting under color of state law.

## F.  STATEMENT OF FACTS

### EVICTION, ARRESTS, AND PROSECUTIONS

23.     Plaintiffs MEYERS, BAKER, STREKAL and WALSH, as well as the class members on whose behalf they bring this action ("PLAINTIFFS") were arrested while participating in the Occupy Wall Street ("OWS") movement, or attempting to participate, or observing their activities. The event was a peaceful, law-abiding expression of thought, political opinion, and feeling, through speech, discussion, study, music, theater, graphic art, dance, and the participants' manifest physical presence, which took place at Zuccotti Park (the "Park").

24.     Zuccotti Park, consisting of a small plaza in downtown Manhattan's financial district, had become the focus of international media scrutiny as demonstrators discussed and protested government policies in favor of corporate gain at the expense of private citizens.

25.     Dozens of OWS supporters were living, some continuously, others for various periods of time, in tents in the Park, or sleeping bags in the open air, and had fabricated living quarter facilities, including a kitchen and library, while

remaining assembled in protest, discussion, performance, and displays of art, for observers passing by the Park, or via broadcast and internet media around the world.

26.     The activities, which were abundantly written about, video-recorded and photographed by members of the local and international press and media, were a vigorous exercise of First Amendment rights in a public space, and included overtly expressive signs, artwork, and speech, as well as expressive activities, including their assembly and presence in Zuccotti Park, sleeping in Zuccotti Park, and residing in Zuccotti Park, over a period of months.  Their expressive conduct, including their continued, collective physical presence in the Park, expressed and was understood by observers there and around the world to express the OWS message of protest against government collusion in corporate gain at the expense of humanity and values dear to civilized human culture.

27.     The Defendants knew that the demonstrators were engaged in activities protected by the First and 14th Amendments to the U.S. Constitution.

28.     The circumstances precluding a lawful arrest included the following:

29.     The PLAINTIFFS were in compliance with the Park rules, which provided for the park to be open to the public 24 hours a day, every day of the year.

30.     Defendant CITY OF NEW YORK, through its mayor, Defendant

BLOOMBERG, and NYPD Commissioner KELLY, had publicly announced that so long as the camping demonstrators continued to obey the law they must and would be allowed to stay in the park.

31.   Defendants CITY OF NEW YORK; BLOOMBERG, ESPOSITO, KELLY, YNOA, ZARANIS, DUBOVICI and Officer DOES 1-100 (the "DEFENDANTS") failed to obtain a court order or warrant of eviction prior to evicting the PLAINTIFFS as required by New York Real Property Section 235.

32.   The DEFENDANTS and the park's private owners failed to obtain or confirm approval from the New York City Planning Commission to modify the rules of the park which made it publicly available at all times, prior to suspending or modifying those rules to evict the PLAINTIFFS, as required by agreement between the park's private owners, and the CITY OF NEW YORK.

33.   The DEFENDANTS failed to provide PLAINTIFFS with notice or an opportunity to be heard prior to the Eviction as required by the Due Process component of the US Constitution 14th Amendment.

34.   Accordingly, the PLAINTIFFS had a reasonable belief that, having lawfully entered, and following announcements by New York City officials that they could remain in the park, that they were lawfully remaining in the park (as in fact they were), and therefore PLAINTIFFS could not have committed a trespass

under New York PL § 140.05[1], which requires the trespasser to knowingly enter or remain unlawfully in the subject premises.

35.    There was, therefore, no reasonable basis for Defendants CITY OF NEW YORK, BLOOMBERG, KELLY, or ESPOSITO, or any of the individual officer defendants, to believe that the PLAINTIFFS were, at the time of the Eviction and arrests, committing the crime of Trespass under New York PL § 140.05.

36.    There was also no reason for the arresting officers to believe at the time of the Eviction and arrests, that there was anyone in the area who could be annoyed by the PLAINTIFFS conduct, other than police.

37.    There was thus no basis for an arrest on the charge of Disorderly Conduct (New York PL § 240.20)[2].  Because arrest under that statute requires, at minimum, evidence of the possibility of causing annoyance to a member of the public, the absence from the general vicinity of anyone who might be annoyed was

---

[1] A person is guilty of trespass when he knowingly enters or remains
unlawfully in or upon premises.
[2] § 240.20 Disorderly conduct.
    A  person  is  guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a  risk thereof:
    1.  He  engages  in  fighting or in violent, tumultuous or threatening behavior; or
    2. He makes unreasonable noise; or
    3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or
    4. Without lawful authority,  he  disturbs any  lawful  assembly  or meeting of persons; or
    5. He obstructs vehicular or pedestrian traffic; or
    6.  He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or
    7. He creates a hazardous or physically offensive condition by any act
 which serves no legitimate purpose.
    Disorderly conduct is a violation.

fatal to the lawfulness of an arrest on that basis, as any reasonable officer would know.

38.    Even if there had been a reasonable basis for an arrest on a charge of Trespass or of Disorderly Conduct, the ongoing nature of the PLAINTIFFS' presence in the park left DEFENDANTS ample opportunity to obtain a court order for their eviction or arrest, as required under such circumstances by the Fourth Amendment, and by the procedural due process component of the 14th Amendment to the U.S. Constitution.

39.    PLAINTIFFS were engaged in First Amendment-protected association and expression activities in Zuccotti Park.

40.    Zuccotti Park was a traditional public forum for First Amendment purposes.

41.    All those present in the park, other than police, or representatives of the news media, were expressing an opinion in support of the Occupy Wall Street movement and its protest against government facilitation of financial inequality.

42.    On or about 1:00 A.M. in the early morning of November 15, 2011, NYPD officers made an announcement by bullhorn to those in the Park, ordering them all to leave, taking their personal possessions.

43.    About one hour later, Defendant NYPD officers made a decision to proceed with an unlawful eviction and arrests.

44.    Said decision was made by each individual officer using his own independent authority and independent judgment and in compliance with decisions and orders made by DOE NYPD defendant command officers and by Defendants BLOOMBERG, KELLY and ESPOSITO, on behalf of, and as an official or unofficial policy of Defendant CITY OF NEW YORK.

45.    NYPD officer Defendants YNOA, FRANCOIS, ZARANIS, DUBOVICI and DOES 1-100 approached and contacted the plaintiffs, and physically restrained them, or, while in the immediate vicinity, issued orders to subordinate officers to do so.

46.    Thereafter Defendant NYPD Patrol Officers FREDDY YNOA Shield 18851, HANS FRANCOIS Shield 25825, JOHN ZARANIS, Shield 09645 and DOES 1-100 caused PLAINTIFFS BAKER (by Defendant YNOA), MEYERS (by Defendant ZARANIS), STREKAL (by Defendant DUBOVICI) and WALSH (by Defendant FRANCOIS) to be imprisoned for a period of time in excess of 1 hour.

47.    Thereafter, the DEFENDANTS caused knowingly false criminal charges to be filed against PLAINTIFFS, which required them to make court appearances or remain subject to court jurisdiction and an order to appear in connection with those charges for a period of months subsequent to arraignment and prior to their ultimate dismissal, but which resulted in termination of the charges favorable to the PLAINTIFFS.

48.     The criminal charges were maliciously initiated by DEFENDANTS without probable cause, knowing them to be false; in retaliation against the PLAINTIFFS for their exercise of First Amendment rights; for their presence in Zuccotti Park against the wishes of the DEFENDANTS; for their failure to obey NYPD officer orders with the level of respect and subservience DEFENDANTS felt they should show; and for their political views.

49.     PLAINTIFFS had for more than 30 days collectively occupied shelters and buildings in the form of tents and other structures with walls and roofs intended for habitation and used by them as their homes for an indefinite period of time.

50.     PLAINTIFFS' eviction and arrests were made without probable cause to believe that any crime had been committed by them, or any other lawful basis for their arrests, and were in violation of PLAINTIFFS' rights under the Fourth Amendment to the U.S. Constitution. No objectively reasonable officer or official with knowledge of these circumstances could have participated or caused or approved or ratified this conduct without knowing it constituted violations of clearly established law.

51.     The false arrests, imprisonments, and prosecutions of PLAINTIFFS as set forth above were intended to punish PLAINTIFFS for their exercise of their rights to freedom of speech and expression under the First Amendment to the U.S.

Constitution, and their rights of association under the First and Fourth Amendments to the U.S. Constitution.

52.     The false arrests and imprisonments of PLAINTIFFS immediately terminated their First Amendment activities as set forth hereinabove.

53.     The false arrests, imprisonments and prosecutions of PLAINTIFFS were intended to and foreseeably would discourage and "chill" PLAINTIFFS or any person of reasonable firmness who wishes to engage in free speech expressive and associational activities from engaging in the exercise of those rights. The actions of DEFENDANTS as set forth above were in violation of the First and Fourteenth Amendments to the U.S. Constitution. No objectively reasonable officer or official with knowledge of the circumstances could have participated or caused or approved or ratified this conduct without knowing it constituted violations of clearly established law.

54.     The Eviction occurred without notice to plaintiffs of a hearing, or an opportunity to participate in such hearing, in violation of the procedural due process guarantee of the US Constitution 14th Amendment.

55.     No individual Defendant has received any reprimand or other discipline as a result of the unlawful actions in violation of the US Constitution as set forth hereinabove.

## CITY POLICY

56.     Defendant CITY, through its preparation and issuance of both formal and informal orders and directives, by and through senior officials including Defendants BLOOMBERG, KELLY and ESPOSITO, and through its formal and informal monitoring of officer activities, both mandated and was aware of the false arrests and malicious prosecutions of persons engaged in First Amendment activity in the public spaces of New York City, such as PLAINTIFFS herein, and both caused, and failed to take sufficient steps to prevent, unlawful stops, arrests, imprisonments, and malicious prosecutions, including that of PLAINTIFFS as set forth herein.

57.     The CITY was also aware and should have also been aware of the failure of the DEPARTMENT to bring disciplinary charges against those officers who sanction or ignore unlawful stops, arrests, imprisonments and prosecutions, to punish officers that sanction and/or cover up such unlawful stops, arrests, imprisonments and prosecutions, and to discourage others from doing so.

58.     All of the aforementioned acts and omissions of defendants CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, NYPD Patrol Officers FREDDY YNOA Shield 18851, HANS FRANCOIS Shield 25825, JOHN ZARANIS, Badge 09645, VASILE DUBOVICI Shield 28892, and NYPD Officer

DOES 1-100, their agents, servants and employees, were carried out under the color of state law.

59.    All of the aforementioned acts of the DEFENDANTS deprived the PLAINTIFFS of the rights, privileges and immunities guaranteed to citizens of the United States by the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983, as explained herein.

60.    The acts complained of were carried out by the aforementioned DEFENDANTS with all the actual and/or apparent authority attendant to official police.

61.    The acts complained of were carried out by the DEFENDANTS pursuant to the customs, usages, practices, procedures, and the rules maintained by CITY OF NEW YORK and NYPD, all under the supervision of ranking officers of said NYPD, including Defendants KELLY and ESPOSITO, and the Mayor of the CITY OF NEW YORK, Defendant BLOOMBERG.

62.    The DEFENDANTS, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

63.    This unlawful policy and conduct was the direct, proximate and foreseeable cause of the damages, harms and injuries to PLAINTIFFS as set forth

herein.

## QUALIFIED IMMUNITY

64.     No objectively reasonable, properly-trained and disciplined officer or official with knowledge of the circumstances could have participated or caused or approved or ratified the conduct of DEFENDANTS as set forth hereinabove without knowing it constituted violations of clearly established law.

65.     Qualified immunity does not shield Defendant CITY OF NEW YORK, regardless of whether it shields any individual Defendant herein.

## CLASS ACTION ALLEGATIONS

66.     On or about 2:00 AM November 15, 2011, at Zuccotti Park in downtown New York City's borough of Manhattan, PLAINTIFFS, including all members of the plaintiff class, were present in Zuccotti Park; were falsely arrested and imprisoned during and after the Eviction and as a result of the Eviction; and were maliciously prosecuted on the basis of knowingly false criminal charges, in retaliation for their lawful conduct and political views, in criminal proceedings that resulted in dispositions favorable to them, as set forth herein.

67.     The proposed class and their claims satisfy the requirements of
Fed.R.Civ.Pro. Rule 23(b)(3) and/ or, Rule 23(b)(2).

68.     The proposed class of persons, which is composed of approximately
100+ persons, is too numerous for joinder.

69.     The NYPD acted according to Defendant CITY OF NEW YORK'S
official and unofficial policy, as set forth herein, and in so doing acted on grounds
that apply generally to the class.

70.     The eviction and arrests were in violation of the class's (a) U.S.
Constitution Fourth Amendment rights against unlawful seizure;  (b) U.S.
Constitution First Amendment rights of speech and assembly; and (c) U.S.
Constitution 14th Amendment procedural due process rights; and raise common
questions of law and fact that predominate over any questions affecting only
individual members.

71.     The claims of the named plaintiffs are typical of the claims of the
class, as the named plaintiffs were subjected to unlawful seizure and imprisonment
by the DEFENDANTS, under the same circumstances and pursuant to the same
orders and policies of CITY OF NEW YORK, as all members of the represented
class.

72.     The named plaintiffs have a strong interest in the outcome of this
action, have no conflicts of interest with the plaintiff class, and will fairly and

adequately protect the interests of the class.

73.     If for any reason any of the named plaintiffs is unable to proceed as a class representative, they bring this action on their own individual behalf as well, as a joined individual plaintiff.

74.     The named plaintiffs are represented by the undersigned counsel. Undersigned counsel has successfully litigated a complex federal court class action constitutional rights matter focused on unlawful detention without arraignment or trial. Undersigned counsel was one of the counsel of record who drafted the original complaint, and individually drafted and argued the successful class certification motion, in *Mochizuki v. U.S.*, Civil Action No. 43 Fed. Cl. 97 (1999), before the United States Court of Federal Claims for the District of Columbia (abduction from Latin America and imprisonment in U.S. detention camps of 1000+ persons of Japanese race and national origin by the U.S. government during World War II for use in hostage exchange). The Mochizuki case resulted in settlement payments to class members totaling $5,000,000, and in a formal public apology by U.S. President Bill Clinton to the class members.  Counsel for the plaintiffs has the resources, expertise and experience to prosecute this action. Counsel for the plaintiffs knows of no conflicts among members of the class or between the attorneys and members of the class.

75.     A class action is superior to other available methods for the fair and

efficient adjudication of this controversy. The class is readily defined, easily

identifiable by reference to court and police arrest records, and prosecution of a

class action will eliminate the need of repetitious litigation.


FIRST CLAIM FOR RELIEF

42 U.S.C. § 1983/ First and Fourth Amendments

Unlawful Arrest and Imprisonment


76.     PLAINTIFFS repeat and reallege the foregoing paragraphs as if the

same were fully set forth herein.

77.     DEFENDANTS acted under pretense and color of state law and in

their individual and official capacities and within the scope of their employments

as NYPD and CITY OF NEW YORK officers and employees.

78.     By reason of unlawfully evicting, seizing, stopping, arresting, and

imprisoning, and failing to intervene to prevent such unlawful conduct, when

PLAINTIFFS were engaged in speech and association activities, DEFENDANTS

deprived PLAINTIFFS of rights, remedies, privileges, and immunities guaranteed

to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but

not limited to, rights guaranteed by the First Amendment to the United States

Constitution to freedom of speech and association, and rights guaranteed by the

Fourth Amendment to the United States Constitution to be free from unreasonable search, seizure, arrest or imprisonment without warrant or probable cause.

79.     As a direct and proximate result of the above misconduct, PLAINTIFFS were prevented from engaging in speech and expression and associating with their friends and fellow participants in the exercise of speech and expression; and deprived of their liberty; publicly embarrassed and humiliated; suffered pain and suffering, emotional injury, and were otherwise damaged and injured.

## SECOND CLAIM FOR RELIEF

42 U.S.C. § 1983/ First and 14th Amendments

Unlawful Eviction

80.     PLAINTIFFS repeat and reallege the foregoing paragraphs as if the same were fully set forth herein.

81.     DEFENDANTS acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as NYPD and CITY OF NEW YORK officers and employees.

82.     By reason of conducting a forcible eviction of occupants of Zuccotti Park, when their presence in Zuccotti Park was an exercise of First Amendment expression and association, and failing to intervene to prevent such unlawful

conduct, without providing to the PLAINTIFFS notice of or an opportunity to be heard, DEFENDANTS deprived PLAINTIFFS of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the procedural due process component of the First and 14th Amendments to the United States Constitution.

83.     As a direct and proximate result of the above misconduct, PLAINTIFFS were prevented from engaging in speech and expression and associating with their friends and fellow participants in the exercise of speech and expression; and deprived of their residence and liberty; publicly embarrassed and humiliated; suffered pain and suffering, emotional injury, and were otherwise damaged and injured.

THIRD CLAIM FOR RELIEF

42 U.S.C. § 1983/ Fourth Amendment

Malicious Prosecution

84.     PLAINTIFFS repeat and reallege the foregoing paragraphs as if the same were fully set forth herein.

85.     DEFENDANTS caused the commencement of a criminal proceeding

against PLAINTIFFS.

86.     Said criminal proceeding resulted in a termination favorable to

PLAINTIFFS.

87.     DEFENDANTS caused said criminal proceeding by filing false

charges without probable cause.

88.     DEFENDANTS maliciously caused said criminal proceeding.

89.     PLAINTIFFS were seized subsequent to arraignment in that they were

required to personally appear at one or more court appearances or remained subject

to the court's authority to command such court appearances.


## FOURTH CLAIM FOR RELIEF

### MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

### (PLAINTIFFS Against Defendant CITY OF NEW YORK)


90.     PLAINTIFFS repeat and reallege the foregoing paragraphs as if the

same were fully set forth herein.

91.     The DEFENDANTS, collectively and individually, while acting under

color of state law, engaged in conduct that constituted a custom, usage, practice,

procedure or rule maintained by the respective municipality/authority, that is,

Defendant CITY OF NEW YORK and its NYPD, which is forbidden by the

Constitution of the United States.

92.     Defendant CITY OF NEW YORK, through the NYPD, its senior officers including Defendants KELLY and ESPOSITO,  and New York City's Mayor, Defendant MICHAEL RUBENS BLOOMBERG, and acting under the pretense and color of law, has permitted, tolerated and been deliberately indifferent to a pattern and practice of unlawful seizures, stops, arrests, imprisonments, and malicious prosecutions by city government officials and NYPD officers, including the individual DEFENDANTS.  This widespread policy and tolerance of unlawful seizures, stops, arrests, imprisonments, and malicious prosecutions of persons engaged in free speech and association activities, constitutes a municipal policy, practice or custom and led to PLAINTIFFS' unlawful seizure, stop, arrest, and imprisonment.

93.     By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom, pursuant to which PLAINTIFFS were subjected to unlawful eviction, seizure, stop, arrest, imprisonment and prosecution, and wrongfully deprived of their freedoms of speech and association, of their liberty and residence, as set forth hereinabove, Defendant CITY OF NEW YORK has deprived PLAINTIFFS of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including but not limited to, rights guaranteed by the First, Fourth, and procedural due process

component of the 14th Amendments to the United States Constitution to be free from violation of their rights to free speech and association, and from search, arrest, or imprisonment without warrant or probable cause, and to due process of law.

94.     At all times material to this complaint, Defendant CITY OF NEW YORK, acting through the NYPD, NYPD's senior officers including Defendants KELLY and ESPOSITO, and the CITY OF NEW YORK's mayor, Defendant BLOOMBERG, and through the individual Defendants, maintained de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees, and of failing to inform the individual DEFENDANTS' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

95.     The aforementioned customs, policies, usages, practices, procedures and rules maintained by Defendant CITY OF NEW YORK and NYPD included, but were not limited to unlawful eviction, arrest, imprisonments, and malicious prosecutions, such as PLAINTIFFS suffered.

96.     The foregoing customs, policies, usages, practices, procedures and rules maintained by Defendant CITY OF NEW YORK, and NYPD were the moving force behind the constitutional violations suffered by PLAINTIFFS as

alleged herein.

97.     Additionally, NYPD's deliberate indifference to proper training, supervising and/or disciplining of policy-making officials, including Defendant BLOOMBERG, constituted explicit and/or tacit approval of their illegal and unconstitutional conduct.

98.     The acts complained of were a direct and proximate result of the usages, practices, procedures and rules maintained by Defendant CITY OF NEW YORK and NYPD, which constituted deliberate indifference to the safety, well-being and constitutional rights of PLAINTIFFS.

99.     The foregoing customs, policies, usages, practices, procedures and rules maintained by Defendant CITY OF NEW YORK and NYPD were the direct and proximate cause of the constitutional violations suffered by PLAINTIFFS as alleged herein.

100.    As a direct and proximate result of the above customs, policies, usages, practices, procedures and rules maintained by Defendant CITY OF NEW YORK and NYPD, PLAINTIFFS were prevented from engaging in speech and expression and associating with their friends and fellow participants in the exercise of speech and expression; and deprived of their residence and liberty; publicly embarrassed and humiliated; suffered pain and suffering, emotional injury, and were otherwise damaged and injured.

## F.  DAMAGES

101.   PLAINTIFFS bring this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of their civil rights, as said rights are secured by said statutes and the Constitution of the United States.

## CONCLUSION

102.   WHEREFORE, the PLAINTIFFS demand a jury trial and the following relief jointly and severally against all the defendants:

a.  Compensatory damages, in an amount to be determined by a jury;

b.  Punitive damages (except against Defendant CITY), in an amount to be determined by a jury;

c.  Costs and interest and attorney fees;

///

///

///

///

///

d.  Such other and further relief, including all appropriate equitable relief, as

to the Court may seem just and proper.

Dated:        New York, New York
              November 14, 2014                    /S/

                                    _____
                                    PAUL L. MILLS, Esq. (pm0653)
                                    Park West Finance Branch
                                    PO Box 20141
                                    New York, New York 10025
                                    (646) 637-3693
                                    plm36@columbia.edu
                                    Attorney for PLAINTIFFS