UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES MEYERS, JOHN BAKER, JUSTIN STREKAL and MILES WALSH (CLASS REPRESENATIVES),

Plaintiffs,

-against-

CITY OF NEW YORK; MICHAEL RUBENS BLOOMBERG, individually and in his official capacity as former Mayor of the City of New York; former NYPD Chief of Department JOSEPH J. ESPOSITO, individually and in his official capacity; former NYPD Commissioner RAYMOND KELLY, individually and in his official capacity; NYPD Patrol Officers FREDDY YNOA Shield 18851, HANS FRANCOIS Shield 25825, JOHN ZARANIS Shield 09645, VASILE DUBOVICI Shield 28892, Officer DOES 1-100,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*ZACHARY CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Joy T. Anakhu, Andrew J. Lucas*
*Tel: (212) 356-2373*
*Matter No. 2014-039630*

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES ............................................................................iii

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ...............................................................................1

RULE 12(b)(6) STANDARD FOR DISMISSAL .................................................3

ARGUMENT ...............................................................................................3

PROBABLE CAUSE EXISTED FOR PLAINTIFFS' ARRESTS AND PROSECUTIONS_____ 3

    Probable Cause Existed for Plaintiffs' Arrests under N.Y. PL § 240.20(6) ......................................................4

    Probable Cause Existed for Plaintiffs' Arrests under N.Y. PL § 195.05 ..........................................................5

    Probable Cause Existed for Plaintiffs' Arrests under N.Y. PL§ 140.05 ...........................................................6

    Plaintiffs' Claim for Malicious Prosecution Must be Dismissed ..............................................................8

    The Officers are Entitled to Qualified Immunity for Plaintiff's Arrest and Prosecution ............................................10

PLAINTIFFS' CLAIM FOR ANY FIRST AMENDMENT VIOLATIONS MUST BE DISMISSED_____ 12

    Any First Amendment Time Place and Manner Restriction Fails as Pled.......................................................12

    Any First Amendment Retaliation Claims Fails as Pled ...........................................................16

PLAINTIFFS FAIL TO STATE A CLAIM FOR PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT_____ 18

Plaintiffs Were Squatters or At Most Licensees ........................................20

New York Real Property §235 is Inapplicable ..........................................21

Sufficient Post-Deprivation Relief Was Available to Plaintiffs ................................................................................................22

PLAINTIFF FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY_____ 23

CONCLUSION ........................................................................................... 25

TABLE OF AUTHORITIES

## Cases

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)........................................................8, 9, 10, 18

Bd. of Regents of State Colls. v. Roth, 408 U.S. 564 (1972) ..................................19, 20

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ....................................................3, 10

Berger v. Schmitt, 91 Fed. Appx. 189 (2d Cir. 2004)....................................................7

Bernard v. United States, 25 F.3d 98 (2d Cir. 1994) ....................................................3

Blair v. Inside Edition Prods., 7 Supp. 3d 348, (S.D.N.Y. 2014) .................................20

Bosone v. County of Suffolk, 274 A.D.2d 532 (2nd Dept. 2000).................................24

Bradley v. City of New York, 2009 U.S. Dist. LEXIS 51532 (E.D.N.Y. June 18,
    2009) ......................................................................................................................24

Bray v. City of New York, 2005 U.S. Dist. LEXIS 21748 (S.D.N.Y. 2005) ................19

Brown v. City of New York, 2014 U.S. Dist. LEXIS 83513 (S.D.N.Y. 2014) ...............6

C.G. v. City of New York, 2013 U.S. Dist. LEXIS 153020 (E.D.N.Y. 2013) ...............6

Chicago Acorn v. Metro Pier, 10 F.3d 695 (7th Cir. 1998)........................................14

City of Los Angeles v. Heller, 475 U.S. 796 (1986) ....................................................24

City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986)....................................15

Clark v. Community for Creative Non—Violence, 468 U.S. 288 (1984) ...............13, 17

Cornelius v. NAACP, 473 U.S. 788 (1985)............................................................14, 15

Covington v. City of New York, 171 F.3d 117 (2d Cir. 1999)........................................3

Cuevas v. City of New York, 2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7,
    2009) ......................................................................................................................24

De Villar v. City of New York, 628 F. Supp. 80 (S.D.N.Y. 1986).................................20

Devenpeck v. Alford, 543 U.S. 146 (2004) ................................................................3, 4

Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993) ............................................24

Fabrikant v. French, 691 F.3d 193 (2d Cir. 2012) ......................................................17

Faruki v. City of New York, 2012 U.S. Dist. Lexis 47310 (S.D.N.Y. 2012).................6

Garcia v. Bloomberg, 865 F. Supp. 2d 478 (S.D.N.Y. 2012)......................................25

Garcia v. Doe, 779 F.3d 84 (2d Cir. 2014) ...........................................................10, 11

Hotel Employees v. City of New York, 311 F.3d 534, (2d Cir. 2002).........12, 13, 14, 15

Hudgens v. NLRB, 424 U.S. 507, (1976).....................................................................12

Hunter v. Bryant, 502 U.S. 224 (1991).......................................................................11

In re Elevator Antitrust Litig., 502 F.3d 47, (2d Cir. 2007).........................................3

Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006) ..............................................................3

Jenkins v. City of New York, 1999 U.S. Dist. LEXIS 15353 (S.D.N.Y. Sept. 29, 1999) ...........................................................................................................................9

Johnson v. City of New York, 2008 U.S. Dist. LEXIS 78984 (S.D.N.Y 2008)............6

Johnson v. Constantellis, 221 Fed. Appx. 48 (2d Cir. 2007).........................................9

Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010) ...................................................16

Lebowitz v. City of New York, 2014 U.S. Dist. LEXIS 25515 (S.D.N.Y. 2014)..................11, 17

Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995) ..............................................................6

Lowth v. Town of Cheektowaga, 82 F.3d 563 (2d Cir. 1996).......................................9

Malley v. Briggs, 475 U.S. 335 (1986)........................................................................11

Marcavage v. City, 689 F.3d 98, (2d Cir. 2012)..........................................4, 13, 14, 16

Matter of Waller v City of New York, 34 Misc. 3d 371 (N.Y. Sup. Ct. 2011) .........2, 15

McMenemy v. City of Rochester, 214 F.3d 279 (2d Cir. 2001).....................................19

Metropolitan Council Inc. v. Safir, 99 F. Supp. 2d 438 (S.D.N.Y. 2000) ....................13

Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658 (1978)......................24

Mozzochi v. Borden, 959 F.2d 1174 (2d Cir. 1992)........................................................4

O'Neill v. Town of Babylon, 986 F.2d 646 (2d Cir. 1993) ............................................3

Oklahoma City v. Tuttle, 471 U.S. 808 (1985)..............................................................24

Parratt v. Taylor, 451 U.S. 527 (1981) ........................................................................23

Paulino v. Wright, 210 A.D.2d 171 (N.Y. App. Div. 1994)...........................................21

Pelt v. City of New York, 2013 U.S. Dist. LEXIS 122848 (E.D.N.Y. 2013) .........21, 23

People v Nunez, 36 Misc. 3d 172 (N.Y. City Crim. Ct. 2012)............................... passim

People v. Gruenberg, 67 Misc. 2d 185 (1971)..............................................................22

People v. O'Leary, 153 Misc. 2d 641 (N.Y. City Ct. 1992)...........................................4

Posr v. Court Officer Shield # 207, 180 F.3d 409 (2d Cir. 1999)................................8, 9

Quinoy v. Pena, 2014 U.S. Dist. LEXIS 67016 (S.D.N.Y. May 14, 2014)...................8

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997) .....................................8

Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458 (2d Cir. 2006)...................22

Rodriguez v. City of New York, 2015 U.S Dist. LEXIS 51448 (S.D.N.Y. April 20, 2015) ...................................................................................................................7

Roman-Malone v. City of New York, 2013 U.S. Dist. LEXIS 104368 (S.D.N.Y. 2013) .................................................................................................................19

Rounseville v. Zahl, 13 F.3d 625 (2d Cir. 1994) ..........................................................9

Safepath Sys. LLC v. N.Y.C. Dep't of Educ., 563 F. App'x 851 (2d Cir. 2014) ..........20

Santulli v. Russelo, 2013 U.S. App. LEXIS 5285 (2d Cir 2013) ................................16

Seeds of Peace Collective v. City of Pittsburgh, 2010 U.S. Dist. LEXIS 52187, (W.D.Pa. 2010) ......................................................................................................13

Shamir v. City of New York, 2014 U.S. Dist. LEXIS 97805 (S.D.N.Y. July 15, 2014) ...............................................................................................................13, 17

Singer v. Fulton County, 63 F.3d 110 (2d Cir. 1995)....................................................3

Smith v. Slevin, 2015 U.S. Dist. LEXIS 43313 (E.D.N.Y. 2015).........................20, 21

Texas v. Johnson, 491 U.S. 397 (1989) ......................................................................13

Thimmesch v, City of New York, 2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. 2013)...........7, 11, 17

U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012) ........................................................5

Velez v. Levy, 401 F.3d 75 (2d Cir. 2005) ..................................................................19

Visken v. Oriole Realty Corp., 305 A.D.2d 493 (N.Y. App. Div. 2003) .....................21

Waller v. City of New York, 34 Misc. 3d 371, (1st Dep't Sup. 2011).........2, 11, 12, 15

Walls v. Giuliani, 916 F. Supp. 214 (E.D.N.Y. 1996)..................................................20

Ward v. Rock Against Racism, 491 U.S. 781 (1989) ....................................................13

Warren v. Fairfax County, 196 F.3d 186 (4th Cir. 1999) ............................................14

Whren v. United States, 517 U.S. 806 (1996) ................................................................4

Young v. New York City Transit Auth., 903 F.2d 146 (2d Cir. 1990)............................13

Zellner v. Summerlin, 494 F.3d 344 (2d Cir. 2007) ......................................................3

Zinermon v. Burch, 494 U.S. 113 (1990) ....................................................................23

**Statutes**

42 U.S.C. § 1983...................................................................................................1, 23

Fed. R. Civ. P. 8 ...........................................................................................................9

NY PL § 140.05 .................................................................................................... 4, 6-7

NY PL § 195.05 .........................................................................................................4, 5

NY PL § 240.20 (6) ....................................................................................................................4, 5

Defendants City of New York, Michael Bloomberg, Raymond Kelly and Joseph Esposito, by their attorney Zachary Carter, Corporation Counsel of the City of New York, hereby submit this Memorandum of Law in support of their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs Charles Meyers, John Baker, Justin Strekal and Miles Walsh bring this action pursuant to 42 U.S.C. § 1983, individually and as purported class representatives, against defendants alleging they were deprived of their Constitutional rights on or about November 15, 2011.  See Complaint, annexed to the Declaration of Andrew Lucas dated April 22, 2015, as exhibit "A".

Defendants now move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that: (1) probable cause existed for the arrest and prosecution of plaintiffs, and qualified immunity precludes any liability; (2) plaintiffs fail to plead a cause of action for any First Amendment violation; (3) plaintiffs fail to plead a cause of action for unlawful eviction; and (4) plaintiffs fail to allege a pattern or practice that could give rise to municipal liability.

## STATEMENT OF FACTS

Plaintiffs were part of the Occupy Wall Street movement and continuously lived in homes they fabricated in Zuccotti Park.  See Exhibit A, ¶¶ 23-25, 49.  Plaintiffs' homes were in the form of tents or sleeping bags and the facilities constructed included a kitchen and a library.  Id ¶¶ 25, 49. Plaintiffs intended to use these structures for an indefinite period in the park.  Id. ¶ 49.  Plaintiffs believed that their physical presence, coupled with their sleeping and residence in Zuccotti Park, represented expressive conduct protected under the First Amendment. Id. ¶ 26. Plaintiffs concede that the park is privately owned.  Id. ¶ 5.  Plaintiffs also concede that

two state courts considered the eviction of Zuccotti Park as it related to the rules promulgated by the park's owners. Id. ¶ 4. In rendering their decisions, the courts weighed the First Amendment rights of the protestors along with that of the private owners to maintain their property and correct hazards/violations of law. See People v Nunez, 36 Misc. 3d 172 (N.Y. City Crim. Ct. 2012) ; Matter of Waller v City of New York, 34 Misc. 3d 371 (N.Y. Sup. Ct. 2011). Both courts upheld the clearing of the park as lawful and highlighted the property owners' role in the eviction. See Nunez, 36 Misc. 3d 172, 178 and Waller, 34 Misc. 3d 371, 374.

Zuccotti park rules provide for the park to be open to the public 24 hours a day. See Exhibit A, ¶ 29. Nonetheless, due to an emergent fire hazard, the City of New York announced that the park needed to be cleared. Id. ¶ 3. On November 15, 2011, at 1:00 a.m. NYPD officers ordered plaintiffs out of the park with a bullhorn and told them to take their personal property. Id. ¶ 42. Despite these orders to vacate, plaintiffs believed they could remain indefinitely in the park. Id. ¶¶ 34. Plaintiffs also believed they could remain based on statements made by city officials prior to the clearing. Id. ¶¶ 30, 34. Approximately one hour after announcements were made via bullhorn and passed leaflets, officers began arresting individuals who remained in the park. Id. ¶ 43; Nunez, 36 Misc. 3d 178. Plaintiffs were arrested and refer to charges of disorderly conduct and trespass. See Exhibit A, ¶¶ 34-37, 46. Prior to removing the plaintiffs from the park, defendants did not obtain a warrant of eviction. Id. ¶ 31. Nor did defendants or the park's private owners receive approval from the New York City Planning Commission to modify the rules of the park prior to removing plaintiffs. Id. ¶ 32. Plaintiffs do not, and cannot in good faith, deny that the property owner requested plaintiffs out of the park as detailed by the Nunez court. 36 Misc. 3d 178.

## RULE 12(b)(6) STANDARD FOR DISMISSAL

A complaint may be dismissed pursuant to Rule 12(b)(6) where it fails to plead "enough facts to state a claim to relief that is plausible on its face." See Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1975 (2007). In order to state a claim, the factual allegations contained in the pleading "must be enough to raise a right to relief above the speculative level." See Twombly, 127 S. Ct. at 1965; see also In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

## ARGUMENT

### PROBABLE CAUSE EXISTED FOR PLAINTIFFS' ARRESTS AND PROSECUTIONS

The existence of probable cause to arrest constitutes justification and is a complete defense. Covington v. City of New York, 171 F.3d 117, 112 (2d Cir. 1999). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County, 63 F.3d 110, 118 (2d Cir. 1995)(internal quotations omitted); citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993).

Where there is probable cause to arrest for any offense a false arrest claim is subject to dismissal. Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012); citing Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006); see also Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004); Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007). Probable cause is an objective test, and any alleged alternative motives by defendants are irrelevant. "[M]otivation is not a consideration in assessing probable cause." Singer, 63 F.3d 118. "[W]e refuse to examine the motivation behind the decision by the sergeant to seek an arrest warrant." Mozzochi v.

Borden, 959 F.2d 1174, 1179 (2d Cir. 1992); Whren v. United States, 517 U.S. 806, 812-13 (1996).

As outlined above, if probable cause existed for any offense, whether charged or not, plaintiffs cannot state a constitutional claim stemming from that arrest. Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012); see Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004). Here, based on the factual allegations set-forth within the complaint, plaintiffs could be properly arrested for violating NY PL § 240.20 (6), Disorderly Conduct, NY PL § 195.05, Obstruction of Governmental Administration and NY PL § 140.05, Trespass.

**Probable Cause Existed for Plaintiffs' Arrests under N.Y. PL § 240.20(6)**

N.Y. Penal Law § 240.20(6) makes it a violation when "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof [he] congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." Here, plaintiffs concede that officers ordered them as well as others to leave the park. See Exhibit A, ¶ 42. Plaintiffs also concede that they wilfully disobeyed said orders. Id, ¶ 30, 34. Under a plain reading of NY PL § 240.20(6) and the complaint, plaintiffs actions created probable cause to arrest them for violating § 240.20(6).

In analyzing the mens rea requirement "Penal Law § 240.20 does not require proof that any member of the public actually was inconvenienced, annoyed or alarmed, it is enough that a substantial unjustifiable risk thereof was created. The issue is solely the objective standard of public disturbance', whether 'a reasonable person, under the circumstances, would not tolerate the conduct. It is an annoyance of a 'neighborhood or the public', or the risk thereof, that must be shown." People v. O'Leary, 153 Misc. 2d 641, 656 (N.Y. City Ct. 1992)(quotations omitted). Here, the City of New York rationalized that the park must be cleared in order to address an emergent fire hazard. See Exhibit A, ¶ 3. By refusing to obey lawful orders to clear

- 4 -

the park plaintiffs' actions created a dangerous inconvenience to the public, or in the very least, a risk thereof as defendants attempted to address growing health and safety concerns that arose during the continued occupation of the park.

Further, there can be no dispute that the orders by the police were proper. "[u]nder New York's disorderly conduct statute, an order to disperse is lawful unless the order was purely arbitrary and not calculated in any way to promote the public order." U.S. v. Nelson, 500 Fed. Appx. 90, 93 (2d Cir. 2012) (quotations omitted). The officers' orders were not arbitrary, and it is clear that their actions were to promote the public order. It is indisputable that the condition of the park had become a serious hazard. The use of gas and other combustible materials had essentially "posed a serious hazard to the health and safety of those occupying the park, the City's first responders, and the surrounding community." People v Nunez, 36 Misc. 3d 172, 180 (N.Y. City Crim. Ct. 2012). [1] Therefore when plaintiffs refused to comply with those orders there was probable cause to arrest them under NY PL § 240.20(6).

**Probable Cause Existed for Plaintiffs' Arrests under N.Y. PL § 195.05**

Similarly, probable cause existed to arrest each plaintiff under N.Y. Penal Law §195.05. The statute states "A person is guilty of obstructing governmental administration ("OGA") when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act[.]" Based on the allegations set forth within the Complaint, plaintiffs

---

[1] Nunez, is particularly relevant to the case at bar because the criminal defendant in that proceeding also refused to leave the park on November 15, 2011 after orders were given to vacate. Nunez, 36 Misc. 3d 172. The criminal defendant was arrested for violating NY PL §§ 240.20 (6), 195.05, and 140.05. Id. The Court determined that there was reasonable cause to believe that the defendant had committed the crimes charged.

obstructed governmental administration, *inter alia*, by interfering with defendants' ability to

address mounting health and safety issues that had become problematic in Zuccotti Park.

Plaintiffs' conduct also prevented officers from carrying out a police operation in

the park. Plaintiffs admit that orders were given to vacate the park. See Exhibit A, ¶ 42. Further,

plaintiffs cannot deny that they refused to comply with said orders. See Exhibit A, ¶¶ 30, 34.

Therefore, their refusal to comply established probable cause for OGA. See Brown v. City of

New York, 2014 U.S. Dist. LEXIS 83513 at *21 (S.D.N.Y. 2014) citing C.G. v. City of New

York, 2013 U.S. Dist. LEXIS 153020 (E.D.N.Y. 2013) (Refusing to obey orders to leave the area

can be the basis for an arrest for obstructing governmental administration); Marcavage v. City of

New York, 2010 U.S. Dist. LEXIS 107724 at *30 (S.D.N.Y. 2010) (finding probable cause for

OGA where officers ordered plaintiffs to leave the area numerous times before their arrest);

Johnson v. City of New York, 2008 U.S. Dist. LEXIS 78984 at *10 (S.D.N.Y 2008) ("an officer

has probable cause to arrest for obstructing governmental administration where a person refuses

to comply with an order from a police officer"); see also Lennon v. Miller, 66 F.3d 416, 424 (2d

Cir. 1995) (finding probable cause for arrest where plaintiff refused to follow officer's order to

leave her vehicle).

**Probable Cause Existed for Plaintiffs' Arrests under N.Y. PL§ 140.05**

The law of trespass is clear: "A person is guilty of trespass when he knowingly

enters or remains unlawfully in or upon premises." N.Y. Penal Law § 140.05. Therefore, when

orders to vacate were issued on behalf of the Zuccotti Park owners "they withdrew plaintiffs[']

permission to remain there legally. When plaintiff[s] did not leave, [they were] guilty of

trespass." Lebowitz v. City of New York, 2014 U.S. Dist. LEXIS 25515, *9 (S.D.N.Y. 2014),

citing Faruki v. City of New York, 2012 U.S. Dist. Lexis 47310, *14 (S.D.N.Y. 2012), aff'd, 517

Fed. Appx. 1, 2013 U.S. App. LEXIS 2619 (2d Cir. 2013). "[U]nder New York law it is

unlawful to remain on the premises after being personally given a lawful order to depart, <u>see</u> N.Y. Penal Law §§ 140.05, 140.00(5)" <u>Berger v. Schmitt</u>, 91 Fed. Appx. 189, 190 (2d Cir. 2004).

Thus, when plaintiffs refused to leave the park they became trespassers in violation of 140.05 of the New York Penal Law. <u>See</u> <u>Matthes v. East Fishkill</u>, 785 F.2d 43, 45 (2d Cir. 1986) (one who defies a lawful order to leave premises 'remains unlawfully' within the meaning of penal law) (citing N.Y. Penal Law § 140.00(5)). In this case, plaintiffs concede that the park is privately owned. Exhibit A, ¶ 5. It is also indisputable that the owners of Zuccotti Park sought assistance from the City of New York to remove protestors and their property from the premises. <u>See</u> <u>People v Nunez</u>, 36 Misc. 3d 172, 178 (N.Y. City Crim. Ct. 2012). In response to this request to evacuate, plaintiffs and others were ordered to leave the premises. <u>Id</u>, ¶42. Plaintiffs did not comply with said orders to vacate. <u>Id</u>. ¶¶ 30, 34. Based on the plain meaning of N.Y. Penal Law §140.05, plaintiffs therefore committed trespass when they refused to obey. As noted by the court in <u>Thimmesch</u>, "[i]n the specific case of Zuccotti Park because of its status as privately-owned property, when one is ordered to leave by police and does not, such conduct can comprise a trespass." <u>Thimmesch v, City of New York</u>, 2013 U.S. Dist. LEXIS 53587 *5-6 (S.D.N.Y. 2013); Exhibit B.

Even a reasonable, yet mistaken, belief is not enough to negate probable cause for trespass. <u>See</u> <u>generally</u> <u>Rodriguez v. City of New York</u>, 2015 U.S Dist. LEXIS 51448 (S.D.N.Y. April 20, 2015) (finding probable cause to arrest for trespass under N.Y. Penal Law §140.05 even where plaintiff's criminal conviction was overturned on grounds that a reasonable belief, even if mistaken, could preclude a conviction). Any prior statements made by former Mayor Michael Bloomberg and former Commissioner Raymond Kelly would not preclude one

from later withdrawing permission to remain. This is particularly relevant in the case at bar because plaintiffs claim to have had a "reasonable," although mistaken, "belief" that they could remain in the park despite orders to vacate. <u>See</u> Exhibit A, ¶34.

### Plaintiffs' Claim for Malicious Prosecution Must be Dismissed

Under New York law in order for plaintiffs to bring a malicious prosecution claim they must plausibly allege that "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." <u>Posr v. Court Officer Shield # 207</u>, 180 F.3d 409, 417 (2d Cir. 1999) (<u>citing</u> <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 124 F.3d 123, 130 (2d Cir. 1997)).

Plaintiffs allege their malicious prosecution claims against defendants generally, without identifying individual action by any of them. <u>See</u> Exhibit A, ¶¶ 84-89. They do not state what, if any, charges were brought, but recite the elements of a malicious prosecution claim, stating their arrest was premised on false charges, without probable cause, and ultimately resulted in a favorable termination. Id., ¶¶ 47, 85-88. "Because vicarious liability is inapplicable to [] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Quinoy v. Pena</u>, 2014 U.S. Dist. LEXIS 67016 (S.D.N.Y. May 14, 2014) (<u>quoting</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1948 (2009)). Here plaintiffs have failed to allege unlawful conduct by any individual defendant, let alone each. That failure is fatal to their claims at the outset.

"Probable cause to commence a criminal proceeding exists when a defendant has 'knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting [plaintiff] in the manner complained of." <u>Jenkins v. City of New York</u>, 98 Civ. 7170 (JGK), 1999 U.S. Dist. LEXIS 15353, at *30 (S.D.N.Y. Sept.

29, 1999), aff'd, 216 F.3d 1072 (2d Cir. 2000) (quoting Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994)).  So long as there exists probable cause to arrest, there is probable cause to prosecute unless the discovery of some intervening fact makes the groundless nature of the criminal charges readily apparent.  Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996).  Probable cause exists for the arrest of plaintiffs, and precludes any claim for malicious prosecution.  Posr v. Court Officer Shield # 207, 180 F.3d 417.  Plaintiffs have not presented any argument that probable cause dissipated after their arrest.  Instead, plaintiffs pled clearly the basis for their lawful arrest: they refused orders to disperse from private property.  "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact."  Johnson v. Constantellis, 221 Fed. Appx. 48, 50 (2d Cir. 2007).  With no intervening fact pled, plaintiffs' malicious prosecution claim must be dismissed.

While reciting the elements of a malicious prosecution claim plaintiffs twice present vague allegations that unnamed defendants presented false statements to commence the criminal prosecution.  Exhibit A, ¶¶47, 87.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1949.  Plaintiffs have failed to do more than present conclusory statements against unidentified defendants.  Plaintiffs' pleadings are both insufficient under Fed. R. Civ. P. 8, and fail to allege a plausible entitlement to relief.  Given plaintiffs' failure to identify any false statements or their speaker it is impossible to rebut those allegations, however, it is clear they have failed to plausibly allege a claim of malicious prosecution.  In Ashcroft v. Iqbal the Supreme Court explained its holding in Bell Atl. Corp. v. Twombly, 550 U.S. 544

(2007) and the standard of review in a motion to dismiss. "Acknowledging that parallel conduct was consistent with an unlawful agreement, the Court nevertheless concluded that it did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior." Ashcroft v. Iqbal, 129 S. Ct. 1950. Here plaintiffs have only recited the elements of a malicious prosecution claim, stating a lack of probable cause, malice, and unidentified false statements. Assuming, *arguendo*, that plaintiffs' claims were "consistent with" a claim of malicious prosecution, they must be dismissed because the facts are more likely explained by plaintiffs' refusal to vacate private property. The Court must dismiss plaintiff's claim because probable cause existed for their prosecution; alternatively the Court must dismiss plaintiffs' claim because they have failed to allege any individual action by any defendant or even what charges they faced; finally, the Court must dismiss plaintiffs' claim for malicious prosecution because the record far more plausibly suggests, not malice, but an arrest for failure to exit private property after being ordered to.

### The Officers are Entitled to Qualified Immunity for Plaintiff's Arrest and Prosecution

Even if probable cause was lacking, plaintiff's claims must be dismissed as the defendants are entitled to qualified immunity. "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2014) Qualified immunity, when properly observed, grants government officials protection not only from liability, but from discovery. "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery." Iqbal, 129 S.Ct. 1953 (calling the avoidance of discovery a serious and legitimate concern). The Supreme

Court has noted "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Qualified immunity is an objective test based on the knowledge possessed at the time, but without considering the subjective intent, motives or beliefs of the government official. Garcia v. Doe, 779 F.3d 92 ("The relevant, dispositive inquiry in determining whether a right is clearly establishes is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (citations omitted). In Garcia the court granted qualified immunity and dismissed claims that protestors were given implied permission by officers to enter the roadway noting that officers would have been aware of warnings to disperse that were deliberately ignored by at least some protestors. Here, plaintiffs seek to pierce qualified immunity despite conceding that plaintiffs ignored orders to disperse for at least one hour, an act they justify as based on a legal theory which was not only untested and necessarily unknown to any officer, but which was defeated in litigation numerous times subsequently. See Exhibit B; Thimmesch, 2013 U.S. Dist. LEXIS 53587; Lebowitz, 2014 U.S. Dist. LEXIS 25515; Nunez, 36 Misc. 3d 172; Waller, 34 Misc. 3d 371. Uncertainty around the hybrid status of Zuccotti Park as a privately owned public space allowed plaintiffs' tent city to stand for almost two months. The Courts have repeatedly held that removing plaintiffs was not illegal, but even if it was the lack of clarity on the Parks status, as well as the ongoing public hazards the tent city posed, make it impossible to find that removing plaintiffs violated clearly established law, or that

the government officials were unreasonable and knowingly violating the law. Accordingly

qualified immunity must protect each of the individual defendants in this action.[2]

**PLAINTIFFS' CLAIM FOR ANY FIRST
AMENDMENT VIOLATIONS MUST BE
DISMISSED_____**

Plaintiffs reference the First Amendment in their First and Second claims for

relief. Exhibit A, ¶¶ 76-79; 80-83. Neither claim is clearly defined as either a First Amendment

retaliation claim, or an allegation of an impermissible time, place, and manner, restriction,

leaving defendants to speculate as to what claims plaintiffs intend to advance.

**Any First Amendment Time Place and Manner Restriction Fails as Pled**

Plaintiffs present no clear time, place and manner First Amendment argument, but

based on the pleadings, may attempt to assert one in response to this motion to dismiss. At the

outset plaintiffs' reliance on her First Amendment right is misplaced. "It is of course, a

commonplace that the constitutional guarantee of free speech is a guarantee only against

abridgment by government, federal or state." Hotel Employees v. City of New York, 311 F.3d

534, 543 (2d Cir. 2002); citing Hudgens v. NLRB, 424 U.S. 507, 513 (1976). It is undisputed

that Zuccotti Park is privately owned. Exhibit A, ¶ 5; Waller v. City of New York, 34 Misc. 3d

371, 373 (1st Dep't Sup. 2011); People v Nunez, 36 Misc. 3d 172, 182 (N.Y. City Crim. Ct.

2012). Plaintiffs' First Amendment challenge to express themselves on private property fails

before reaching the proposed First Amendment analysis.

To the extent the Court applies the First Amendment analysis despite the absence

of any government property, Zuccotti Park is not a traditional public forum, plaintiffs' were not

---

[2] Additionally, defendants note that the officer defendants do not appear to have been served as discussed in the Declaration in Support of this motion. Notwithstanding, defendants note the 2d Cir. Granting qualified immunity to officers relying on their superiors stating "We cannot expect an officer to question the judgment of his superiors, especially when, as here, he has no basis for doing so." Caldarola v. Calabrese, 298 F.3d 156, 166 (2d Cir. N.Y. 2002).

engaged in expressive conduct, their speech was not limited, and any restriction was reasonable and unrelated to content.

In analyzing a First Amendment claim the Court weighs "1) whether Plaintiffs were engaged in First Amendment protected activity 2) in a traditional public forum, and 3) if the restriction on speech was unrelated to content." Marcavage v. City, 689 F.3d 98, 105 (2d Cir. 2012); citing Ward v. Rock Against Racism, 491 U.S. 781, 790-91 (1989).

Plaintiffs were not engaged in expressive conduct merely by remaining in private property. Determining whether conduct possesses sufficient communicative content to bring First Amendment rights into play turns on "whether an intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." Texas v. Johnson, 491 U.S. 397, 404 (1989) (quotations omitted); Metropolitan Council Inc. v. Safir, 99 F. Supp. 2d 438, 447 (S.D.N.Y. 2000). The Southern District has specifically found that an Occupy Wall Street protestor's claimed expression of remaining in a park does not constitute expressive conduct for First Amendment purposes. Shamir v. City of New York, 2014 U.S. Dist. LEXIS 97805, *13 (S.D.N.Y. July 15, 2014) (quoting Clark v. Community for Creative Non—Violence, 468 U.S. 288, 294 (1984)). Further, plaintiffs' claimed expression of staying in the park cannot be said to be "inseparably intertwined with a particularized message." Young v. New York City Transit Auth., 903 F.2d 146, 153 (2d Cir. 1990); See Seeds of Peace Collective v. City of Pittsburgh, 2010 U.S. Dist. LEXIS 52187, *7 (W.D.Pa. 2010)(plaintiffs failed to demonstrate that overnight camping as part of a demonstration conveyed or expressed any message.).

Additionally, as a privately owned and maintained space Zuccotti Park cannot be considered a traditional public forum. Hotel Employees, 311 F.3d 545. Plaintiffs plead that

status as a park for the public makes it a traditional public forum.  However, based on the ownership of the park, as well as the purpose and placement, that is not the case.  <u>Hotel Employees</u>, 311 F.3d 545 (finding City owned Lincoln Center Plaza as a limited public forum or a non-public forum).  In determining whether a government owned location is a public forum, the Courts consider the "location, use function and purpose" of the government in building the space and whether "permitting all forms of expressive activity in the plaza would be incompatible with its purpose" noting the strong government interest in preserving the plaza for its intended purpose. <u>Hotel Employees</u>, 311 F.3d 553; <u>Plaintiffs' Exhibit 2</u>.  Zuccotti Park is not government owned, and government did not manage the park.  It is not bounded by government buildings indicating that public speech is protected.  <u>Hotel Employees</u>, 311 F.3d 552; citing <u>Warren v. Fairfax County</u>, 196 F.3d 186, 189-90 (4th Cir. 1999).  As the plaza at Lincoln Center, or Navy Pier in Chicago, Zuccotti Park may be accessible and bounded by City sidewalks, themselves traditional public fora, but the park itself has not been traditionally available for public expression. <u>Hotel Employees</u>, 311 F.3d 552; citing <u>Cornelius v. NAACP</u>, 473 U.S. 788 (1985); <u>Chicago Acorn v. Metro Pier</u>, 10 F.3d 695 (7th Cir. 1998); .  Plaintiffs' vague allegations that their First Amendment rights were violated fails to take into account that Zuccotti Park is a limited public forum at best, setting aside the fact that their tents and 'occupation' of Zuccotti Park prevented it's use by anyone else, created safety hazards, and precluded the owner from maintaining and cleaning it.

In a limited or non-public forum, restrictions are permissible and need only be neutral and reasonable.  The restriction on speech was absolutely content neutral.  <u>Hotel Employees</u>, 311 F.3d 553. "A regulation is content neutral when it is 'justified without reference to the content of the regulated speech.'" <u>Marcavage</u>, 689 F.3d 104; *citing* <u>City of Renton v.</u>

Playtime Theatres, Inc., 475 U.S. 41, 48 (1986).  The restriction plaintiffs put at issue is the temporary closing of the park so it can be cleaned and maintained.  Setting aside that the Courts have previously ruled on this action and found it lawful, Waller 34 Misc. 3d 373, this action was a brief general prohibition on entry or remaining in Zuccotti Park.  A general restriction on being in the park has no content based component and is indisputably neutral.

Plaintiffs skirt this issue by raising e.g. statements of the Mayor, however the Mayor's prior statements are not at issue, only the restrictions that are alleged to have been placed on Zuccotti Park that led to an infringement on plaintiffs' rights.  A short term closure of the park affects everyone in the park equally and is definitively content neutral.

Additionally, "the reasonableness of the Government's restriction… must be assessed in light of the purpose of the forum and all the surrounding circumstances… [a]ccordingly, in examining the compatibility between the prohibited speech and the particular forum, we ask whether the restrictions on speech are reasonably related to maintaining the environment that the government has deliberately created."   Hotel Employees, 311 F.3d 554; *quoting* Cornelius, 473 U.S. 809.  As outlined by courts in Waller and Nunez, the occupation of the park had resulted in public hazards, damage to the park itself and precluded the use of the park by the general public.  34 Misc. 3d 371, 373 (1st Dep't Sup. 2011); 36 Misc. 3d 172, 182 (N.Y. City Crim. Ct. 2012).  The First Amendment does not create a right to usurp private property, particularly not in defiance of a reasonable restriction, and certainly not in a non-public or limited public forum.  Any decision to temporarily keep all individuals out of the park did not infringe on plaintiffs' First Amendment Rights, but to the extent it did, it was reasonable in light of the fact that plaintiffs had prevented anyone else from using the park for months, prevented the owner from maintaining it, and created an ongoing safety hazard.

Finally, to the extent the Court considers Zuccotti Park a traditional public forum, the content neutral restrictions still prevent plaintiffs from raising any claim as they had ample alternative means of expression. "In this Circuit, an alternative channel is adequate and therefore ample if it is within 'close proximity' to the intended audience" Marcavage, 689 F.3d 106; citing Ward, 491 U.S. 791; United for Peace & Justice, 323 F.3d 175, 177 (2d Cir. 2003).

In United for Peace & Justice, a permit was granted for a location across a major avenue and two blocks away from the protestors desired location, the entrance to the United Nations. United For Peace, 323 F.3d 177. The location two blocks and across an avenue away was both close proximity and permissible under First Amendment. United for Peace, 323 F.3d 177. In this case plaintiffs merely had to exit the park while it was cleaned for several hours to express themselves around the entire perimeter on public sidewalks. Plaintiffs cannot plausibly argue that the sidewalk adjacent to the park was not within close proximity as the park was beside it. Any message they intended to present from inside the park was easily and readily expressed, without limitation, from the sidewalk abutting it.

### Any First Amendment Retaliation Claims Fails as Pled

In order to state a claim for First Amendment retaliation, plaintiff must establish "1) he has an interest protected by the First Amendment; 2) defendants' actions were motivated or substantially caused by his exercise of that right; and 3) defendants' actions effectively chilled the exercise of his First Amendment right." Kuck v. Danaher, 600 F.3d 159, 168, (2d Cir. 2010); Santulli v. Russelo, 2013 U.S. App. LEXIS 5285, *3-4 (2d Cir. 2013).

Plaintiffs' First Amendment retaliation claim fails as probable cause existed for their arrest; qualified immunity shields the actions of the officers; they do not plausibly allege that the actions of the officers were caused by the exercise of his First Amendment rights, and they were not engaged in protective speech by sleeping in the park.

Probable cause is a complete defense to a claim of First Amendment retaliation. "Fabrikant's claims of malicious prosecution, unreasonable search and seizure, and First Amendment retaliation fail because defendants had probable cause…" <u>Fabrikant v. French</u>, 691 F.3d 193, 215-216 (2d Cir. 2012); <u>Papineau v. Parmley</u>, 465 F.3d 46, 59 (2d Cir. 2006) ("One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest.") (quotations omitted).

Here, as outlined above probable cause and qualified immunity render plaintiffs' arrests proper and preclude liability for First Amendment retaliation. Plaintiffs concede that they were ordered to leave the park, but failed to do so. As the Courts held in <u>People v Nunez</u>, 36 Misc. 3d 172 (N.Y. City Crim. Ct. 2012) the arrests under plaintiffs' circumstances in the park were sufficient to sustain the charges and probable cause absolutely existed for their arrest. The Courts later affirmed the propriety of the criminal charges against plaintiffs for violating the rules in Zuccotti Park. <u>Thimmesch v, City of New York</u>, 2013 U.S. Dist. LEXIS 53587 *5-6 (S.D.N.Y. 2013); <u>Lebowitz v. City of New York</u>, 2014 U.S. Dist. LEXIS 25515, *9 (S.D.N.Y. 2014). Similarly the Criminal Courts have ruled the same way. <u>See</u> Exhibit B.

Plaintiffs also cannot satisfy the first and second requirement of a retaliation claim. Plaintiffs were not engaged in expressive conduct at the time of their arrest. Plaintiffs only state that they were "expressing an opinion in support of Occupy Wall Street" by their presence in the park. Exhibit A, ¶ 41. However, "symbolic expression through conduct is protected by the First Amendment when in context, [it] would reasonably be understood by the viewer to be communicative." <u>Shamir v. City of New York</u>, 2014 U.S. Dist. LEXIS 97805, *13 (S.D.N.Y. July 15, 2014) (quotations omitted) (citing <u>Clark v. Community for Creative Non—Violence</u>, 468 U.S. 288, 294 (1984)). In <u>Shamir</u>, the court dismissed an Occupy Wall Street

protestors First Amendment claim that he was engaged in expressive conduct by remaining in a park because remaining in a park "was not engaging in conduct that would reasonably be understood by a viewer to be communicative." Id. Plaintiffs' allegation that being in the park was their statement demonstrates how tenuous their First Amendment claim is. They were fundamentally not engaged in expressive conduct.

Even if the Court takes the plaintiffs presence in the park as a form of expressive conduct plaintiffs cannot plausibly plead that the defendants conduct was substantially motivated by that expressive conduct. As discussed above, plaintiffs must present specific allegations that make their claim more than possible, but plausible in the face of the alternative explanation. Ashcroft v. Iqbal, 129 S. Ct. 1950. Plaintiffs fail to do so despite presenting boilerplate allegations of retaliation and punishment throughout the complaint. Exhibit A, ¶¶ 48, 51. The fundamental tension plaintiffs face in stating a plausible claim is between their own pleadings. Plaintiffs concede they were ordered to vacate the park, and made a conscious decision not to. They then claim that they were falsely arrested for failing to leave though they did not have to, but contrarily, to state a retaliation claim, must also state they were arrested for their expressive conduct. Where plaintiffs present their 'expressive conduct' as remaining in the park, their arrest, it logically, and much more plausibly, follows stems from refusing the order to disperse. Even if plaintiffs attempt to state all police activity at that scene was substantially caused by their expression of their First Amendment right, that general idea cannot inure to the individual defendants who were motivated only by plaintiffs conceded refusal to obey dispersal orders.

## PLAINTIFFS FAIL TO STATE A CLAIM FOR PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

Plaintiffs' Fourteenth Amendment claim fails as a matter of law. Plaintiffs bring a claim for procedural due process, alleging, *inter alia*, that defendants "evicted" them from

Zuccotti Park without notice or an opportunity to be heard. <u>See</u> Exhibit A, ¶¶ 31, 54. Plaintiffs appear to base this purported right to notice and/or hearing on their continued occupation and intent to remain in the park for an indefinite period of time[3]. Yet, in order to sustain a procedural due process claim under the Fourteenth Amendment, plaintiffs must show: a) a protected property interest; b) a deprivation of property; and c) no adequate notice or opportunity to be heard. <u>Bray v. City of New York</u>, 2005 U.S. Dist. LEXIS 21748, *14 (S.D.N.Y. 2005) (<u>citing</u> <u>McMenemy v. City of Rochester</u>, 214 F.3d 279, 285-86 (2d Cir. 2001); <u>see also</u> <u>Roman-Malone</u> <u>v. City of New York</u>, 2013 U.S. Dist. LEXIS 104368 (S.D.N.Y. 2013) ("to state a claim for a violation of procedural due process, plaintiff must allege that []he was deprived a protected interest in liberty or property, without adequate notice or opportunity to be heard").

As a preliminary matter, plaintiffs' received notice that the park would be cleared. <u>See</u> Exhibit A, ¶¶ 3, 42. Moreover, plaintiffs were given at least one hour to collect their belongings and vacate the park. <u>See</u> Exhibit A, ¶43. Conversely, plaintiffs have pleaded no facts to suggest they held a cognizable property interest subject to due process protocols.

"While property interests are constitutionally protected, they are not generally constitutionally established; rather, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" <u>Velez v. Levy</u>, 401 F.3d 75, 85 (2d Cir. 2005) (<u>quoting</u> <u>Bd. of Regents of State Colls.</u> <u>v. Roth</u>, 408 U.S. 564, 577, (1972)). Thus, in order to assert a property interest, "[] plaintiff[s] cannot rely on an "'abstract need or desire for it,' nor [on] a 'unilateral expectation of it,' [instead,] [] plaintiff[s] must have a 'legitimate claim of entitlement to it.'" <u>Safepath Sys. LLC v. N.Y.C.</u>

[3] The complaint is devoid of any facts to suggest that plaintiffs' purported deprivation stems from any tangible property (i.e. tents, sleeping bags, etc.) they possessed while in the park. Therefore, for purposes for this motion defendants assume that plaintiffs' deprivation claims are based on a property interest theory in the park as a whole.

Dep't of Educ., 563 F. App'x 851, 855 (2d Cir. 2014) (citing Bd. of Regents of State Colls, 408 U.S. at 577). Here, outside of an abstract desire or need, plaintiffs held no property interest that would warrant protection under the Fourteenth Amendment.

**Plaintiffs Were Squatters or At Most Licensees**

It is well settled under New York law that squatters have "no legal right to remain on [] property, and therefore cannot assert a cognizable property interest in the continued occupancy of the property." See Smith v. Slevin, 2015 U.S. Dist. LEXIS 43313, *26 (E.D.N.Y. 2015) (quoting Walls v. Giuliani, 916 F. Supp. 214, 217 (E.D.N.Y. 1996); see also De Villar v. City of New York, 628 F. Supp. 80, 83 (S.D.N.Y. 1986) ("plaintiffs had no more of a property interest in th[e] apartments [they entered illegally] than in any others in the City they may have trespassed into and encamped within, that is, none at all."). Because plaintiffs had no property interest in Zuccotti Park, their purported eviction did not implicate the Due Process Clause of the Fourteenth Amendment. De Villar, 628 F. Supp. 80, 83 (S.D.N.Y. 1986).

Plaintiffs' occupation in the park could most accurately be categorized as squatting. It is undisputed that Zuccotti Park is privately owned (see Exhibit A, ¶ 5) and plaintiffs' plead no facts to suggest they received approval from park owners to set up, what can only be described as, a tent city. Further, plaintiffs' intent to remain in the park for an indefinite period, without consent, only strengthens their status as squatters. See Walls, 916 F. Supp. 214, 217 (E.D.N.Y. 1996) (defining a squatter as "one who, without any colour of right, enters on an unoccupied house of land, intending to stay there as long as he can.") (Citations omitted).

Based on the facts provided, plaintiffs can be, and should be, seen as squatters that resided in Zuccotti Park without any legal claim or title to it. See Blair v. Inside Edition Prods., 7 Supp. 3d 348, 359 (S.D.N.Y. 2014) (citing Black's Law Dictionary (9th ed. 2009) defining a squatter as "[a] person who settles on property without any legal claim or title").

Therefore, as squatters, park owners had the lawful right to remove plaintiffs without legal process. See Pelt v. City of New York, 2013 U.S. Dist. LEXIS 122848, *32 (E.D.N.Y. 2013) ("[w]hile it is true that tenants may be evicted only through lawful procedure, others such as…squatters, who are covered under RPAPL 713 are not so protected.") (Citing Paulino v. Wright, 210 A.D.2d 171, 172 (N.Y. App. Div. 1994).

Even if this Court is reluctant to categorize plaintiffs as squatters, at most, they could be classified as licensees. Courts have defined a licensee as "[a] person who has a privilege to enter upon land arising from the permission or consent, express or implied, of the possessor of land but who goes on the land for his own purpose rather than for any purpose or interest of the possessor." Smith v. Slevin, 2015 U.S. Dist. LEXIS 43313, *26 (E.D.N.Y. 2015) (citations omitted). It is clear that plaintiffs entered the park for their own purpose as the complaint alleges they wanted to "express the OWS message of protest against government collusion in corporate gain at the expense of humanity…" See Exhibit A, ¶ 26. Yet even as licensees, they would still not have a property interest in the park. Slevin, at *26. ("[A] license is cancelable at will, and without cause. Accordingly, licensees, as opposed to the continued tenants, do not have a cognizable property interest in the continued occupancy of a property") (citations omitted). See also Pelt, 2013 U.S. Dist. LEXIS 122848, *32 (E.D.N.Y. 2013) (citing Visken v. Oriole Realty Corp., 305 A.D.2d 493, 494 (N.Y. App. Div. 2003) ("since the plaintiff was a mere licensee…, Oriole, as owner, had an owner's common-law right to oust [the plaintiff] without legal process.").

### New York Real Property §235 is Inapplicable

Similarly, any allegation that defendants or park owners were subject to N.Y. Real Prop. Law §235 is without merit. This statutory provision, under Article 7 of New York Real Property, applies to parties involved in a landlord-tenant relationship pursuant to a

residential lease or rental agreement. Moreover, the statute relates to an owner's responsibility to provide essential utilities that have no relevance to the facts of this case. As noted in People v. Gruenberg, 67 Misc. 2d 185, 187 (1971):

> Before a tenant can prevail, in urging the application of the statute [N.Y. Real Prop. Law §235], he must, at least, demonstrate: (1) the existence of a written lease or rental agreement (People v. Sims, 279 App Div. 1031; People v. Blindman, 42 Misc 2d 636), and (2) that the landlord has willfully failed to furnish one or more of the specified services (hot or cold water, heat, etc.) or such 'other services or facility***necessary to the proper or customary use of such building, or part thereof', any or all of which services are required to be furnished by the express or implied terms of such a lease.

Plaintiffs plead no facts to suggest 1) they were in a landlord-tenant relationship as defined by law[4]; 2) held a written lease/rental agreement; or 3) were deprived of essential utilities such as water, heat, power, etc. Nor can plaintiffs plausibly argue that Zuccotti Park qualifies as residential property for dwelling purposes. As such, this argument fails and cannot be used to create a property interest where none exists.

### Sufficient Post-Deprivation Relief Was Available to Plaintiffs

Finally, evening assuming, *arguendo*, that plaintiffs held a property interest in the park, New York law provides for adequate post-deprivation remedies. "The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law'". Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 464 (2d Cir. 2006) (citation omitted). In other words "[t]o determine whether a constitutional violation occurred, it is necessary to ask what process the

---

[4] N.Y. Real Prop. Law §235-f(1)(a) defines a tenant as "a person occupying or entitled to occupy a residential rental premises who is either a party to the lease or rental agreement for such premises or is a statutory tenant pursuant to the emergency housing rent control law or the city rent and rehabilitation law or article seven-c of the multiple dwelling law."

State provided, and whether it was constitutionally adequate." <u>Zinermon v. Burch</u>, 494 U.S. 113, 126 (1990). In <u>Parratt v. Taylor</u>, 451 U.S. 527, 539 (1981) the court found that the availability of a post deprivation hearing is adequate and complies with due process requirements when:

> either the necessity of quick action by the State or the impracticality of providing any meaningful pre-deprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process.

Here, the continued occupation of protestors along with their tents and other items created an emergent fire hazard that required immediate remedy. This made all pre-deprivation processes impractical. Nonetheless, New York law provides for adequate post-deprivation procedures for individuals who allege unlawful evictions from their homes. The complaint is devoid of any facts to suggest that plaintiffs either availed themselves to these procedural safeguards or that the procedures were inadequate. Notwithstanding, the case of <u>Waller</u> demonstrates similarly situated protestors, from the same closing of the park, pursuing a post deprivation hearing in state court and not receiving relief. 34 Misc. 3d 371. Plaintiffs have failed to plead why or how they were deprived of their right to do the same. "Generally, an alleged deprivation of liberty or property is not cognizable under §1983 when adequate post-deprivation state remedies exist to protect the victim's procedural due process rights". <u>Pelt v. City of New York</u>, 2013 U.S. Dist. LEXIS 122848, *41 (E.D.N.Y. 2013) (citations omitted).

Therefore based on the forgoing, plaintiffs' due process claim should be dismissed.

## PLAINTIFF FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY

While municipalities may be sued under 42 U.S.C. § 1983, they are not liable under the theory of *respondeat superior*. The Supreme Court held in <u>Monell v. Department of</u>

Social Services of the City of New York, 436 U.S. 658 (1978) "we conclude that a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory. "

It is also well recognized that a municipal policy cannot be inferred from a single incident of an alleged deprivation of civil rights. Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985). To hold a municipality liable under § 1983 for the allegedly unconstitutional acts of its employees, Plaintiff must prove (1) that the alleged actions by the employees were the result of a specific official policy, custom, or practice of the municipal defendant; (2) that this policy, practice, or custom caused plaintiff's alleged injuries; and (3) that those alleged injuries constituted a violation of plaintiff's constitutional rights. Monell, supra, 436 U.S. 658, 691-694; Bosone v. County of Suffolk, 274 A.D.2d 532, 534 (2nd Dept. 2000).

"The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Bradley v. City of New York, No. 08 Civ. 1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at *8-*9 (E.D.N.Y. June 18, 2009) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)). Thus, plaintiff's claim should be dismissed where he merely states conclusory allegations of municipal policy and practice and fails to allege facts from which the court may infer an actual causal link between the custom or policy and alleged constitutional violation. See e.g., Cuevas v. City of New York, 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *12 (S.D.N.Y. Dec. 7, 2009). Nor can the alleged events of that single day be used to infer or bootstrap an allegation of a broader municipal policy. Oklahoma City 471 U.S. at 824. Critically here, where there is no underlying constitutional violation, there can be no liability pursuant to Monell. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

Furthermore, plaintiffs have only presented the vaguest most conspiratorial allegations against defendant City, that failure to monitor and discipline officers has led to, *inter alia*, false arrests and prosecutions. Exhibit A, ¶¶ 56-56; 92-100. "The breadth with which plaintiffs define the alleged policy underscores its implausibility… The plaintiffs cannot bridge the gap between the broad, conspiratorial policy they attribute to the City and the violations that they have plausibly alleged in this case." Garcia v. Bloomberg, 865 F. Supp. 2d 478, 492 (S.D.N.Y. 2012). Even if plaintiffs had pled plausible individual allegations, their boilerplate claims against the City state that an unspecified failure to train or discipline has resulted in some harm to them without stating what that deficiency is or how training or monitoring could have prevented their arrest for refusing lawful orders on November 15, 2011. This claim relies on the weakest basis for a municipal liability, is illogical when placed in the factual framework of this case, and is insufficiently pled besides.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss plaintiffs' complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:     New York, New York
            April 22, 2015

ZACHARY CARTER
Corporation Counsel of the City of New York

By: _____/s/_____
     Joy T. Anakhu
     Andrew J. Lucas
     Assistant Corporation Counsel
     Special Federal Litigation Division